UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARMED ENTERTAINMENT, LLC,
A Michigan corp.,

                Plaintiff,

                                  Case No. 2:22-CV-10893-LJM-JJCG
v.                                Hon. Laurie J. Michelson
                                  Mag. Jonathan J.C. Grey

PRIMEONE INSURANCE COMPANY,
A foreign corp.

                Defendant.
_____/

Stuart A. Sklar (P38146)
**Fabian, Sklar, King & Liss, P.C.**
Attorneys for Plaintiffs
33450 W. Twelve Mile Road
Farmington Hills, MI 48331
(248) 553-2000
ssklar@fabiansklar.com

David J. Berkal (P39098)
**The Berkal Law Firm**
Attorneys for Defendant
436 S. Broadway, Suite C
Lake Orion, MI 48362
(248) 552-1900
dberkal@berkallaw.com
_____/

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**Local Rule 7.1(a) Certification**: The undersigned counsel certifies that, pursuant to E.D. Local Rule 7.1(a), on November 3, 2022, he conducted a phone conference with David J. Berkal, attorney for Defendant, and sought concurrence in the relief requested in this motion. Mr. Berkal declined concurrence in the relief requested.

**Format Certification**: The undersigned counsel certifies that this document complies with E.D. Local Rule 5.1(a), including: double-spaced (except for quoted materials, headings, and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). The undersigned counsel also certifies that, pursuant to E.D. Local Rule 7.1(d)(3), the brief in support is the appropriate length.

Plaintiff, by counsel, Fabian, Sklar, King & Liss, P.C., pursuant to Fed.R.Civ.P. 56(a), moves for partial summary judgment on Defendant PrimeOne's fraudulent procurement/rescission affirmative defense. For the reasons presented in Plaintiff's brief in support, Plaintiff respectfully requests that this Honorable Court grant this motion, and enter an order of summary judgment dismissing Defendant PrimeOne's fraudulent procurement/rescission affirmative defense.

Respectfully submitted,

FABIAN, SKLAR & KING, P.C.

*/s/ Stuart A. Sklar*

By: _____
Stuart A. Sklar (P38146)
Attorneys for Plaintiff
33450 W. 12 Mile Road
Farmington Hills, MI 48331
(248) 553-2000
ssklar@fabiansklar.com

Dated:  November 4, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARMED ENTERTAINMENT, LLC,
A Michigan corp.,

                Plaintiff,

                                    Case No. 2:22-CV-10893-LJM-JJCG
v.                                  Hon. Laurie J. Michelson
                                    Mag. Jonathan J.C. Grey

PRIMEONE INSURANCE COMPANY,
A foreign corp.

                Defendant.
_____/
Stuart A. Sklar (P38146)
**Fabian, Sklar, King & Liss, P.C.**
Attorneys for Plaintiffs
33450 W. Twelve Mile Road
Farmington Hills, MI 48331
(248) 553-2000
ssklar@fabiansklar.com

David J. Berkal (P39098)
**The Berkal Law Firm**
Attorneys for Defendant
436 S. Broadway, Suite C
Lake Orion, MI 48362
(248) 552-1900
dberkal@berkallaw.com
_____/

**<u>BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT</u>**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   i

CONCISE STATEMENT OF ISSUE PRESENTED . . . . . . . . . . . . . . . . . . .   iii

CONTROLLING AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iv

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

MOTION STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

> **SUMMARY JUDGMENT SHOULD BE GRANTED ON
> PRIMEONE'S FRAUDULENT PROCUREMENT/
> RESCISSION AFFIRMATIVE DEFENSE BECAUSE,
> AS A MATTER OF LAW, PRIMEONE CANNOT RAISE
> A MATERIAL FACT QUESTION THAT TWO ALLEGED
> MISREPRESENTATIONS IN THE INSURANCE
> APPLICATIONS WERE MATERIAL.** . . . . . . . . . . . . . . . . . . . . .   10

> A.   **The inaccurate statement regarding the industry
> experience of Plaintiff's owner did not constitute a
> material misrepresentation since, as underwriter
> White's testimony conclusively establishes, Plaintiff's
> managers Lee and Brown had more than the requisite
> three years of experience for issuance of the policy.** . . . . . . . . . .   13

> B.   **PrimeOne has not met its burden of proving that
> Plaintiff's representation that no "bouncers, security
> guards, or door persons" were on the premises
> constituted a material misrepresentation warranting
> rescission of the policy.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases Cited

*Amster v. Stratton*, 259 Mich. 683, 244 N.W. 201 (1932) . . . . . . . . . . . . . .   11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . .   10

*Bazzi v. Sentinel Ins. Co.*, 502 Mich. 390, 919 N.W.2d 20 (2018) . . . . . . . .   11

*City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581 (6th Cir. 2001) . . . .   10

*Conlin v. Mortg. Elec. Registration Sys., Inc.*,
   714 F.3d 355, 358 (6th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . .   10-11

*Gardner v. Thomas R. Sharp & Sons*,
   279 Mich. 467, 272 N.W. 871 (1937) . . . . . . . . . . . . . . . . . . . . . . . . .   10

*Johnson v. QFD, Inc*, 292 Mich. App. 359, 807 N.W.2d 719 (2011) . . . . . .   11

*Lake States Ins. Co. v. Wilson*,
   231 Mich. App. 327, 586 N.W.2d 113 (1998)0020. . . . . . . . . . . . . . .   11

*Montgomery v. Fid. & Guar. Life Ins. Co.*,
   269 Mich. App. 126, 713 N.W.2d 801 (2005) . . . . . . . . . . . . . . . . . . .   11

*Skinner v. Square D Co.*, 445 Mich 153, 516 N.W.2d 475 (1994) . . . . . . . .   20

*Smith v. City of Toledo*, 13 F.4th 508 (6th Cir. 2021) . . . . . . . . . . . . . . . . .   10

*Sumpter v. Wayne Cnty.*, 868 F.3d 473 (6th Cir. 2017) . . . . . . . . . . . . . . . .   10

*Webb v. Progressive Marathon Ins. Co.*,
   335 Mich. App. 503, 967 N.W.2d 841 (2021) . . . . . . . . . . . . . . . . . . .   12

*Zaremba Equip., Inc. v. Harco Nat'l. Ins. Co.*,
   280 Mich. App. 16, 761 N.W.2d 151 (2008) . . . . . . . . . . . . . . . . . . . .   12

**<u>Rule Cited</u>**

Fed.R.Civ.P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1,9

**<u>Other Authority Cited</u>**

CJS, § 11, p. 507 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

## <u>CONCISE STATEMENT OF ISSUE PRESENTED</u>

Whether summary judgment should be granted on Defendant PrimeOne's fraudulent procurement/rescission affirmative defense because, as a matter of law, PrimeOne cannot raise a material fact question that two alleged misrepresentations in the insurance applications were material.

Plaintiff answers "Yes"

Defendant PrimeOne answers "No"

The Court should answer "Yes"

## CONTROLLING AUTHORITY

Fed.R.Civ.P. 56(a)

*Gardner v. Thomas R. Sharp & Sons*,
    279 Mich. 467, 469, 272 N.W. 871, 872 (1937)

*Bazzi v. Sentinel Ins. Co.*,
    502 Mich. 390, 408-409, 919 N.W.2d 20, 29-30 (2018)

*Lake States Ins. Co. v. Wilson*,
    231 Mich. App. 327, 331, 586 N.W.2d 113, 115 (1998)

*Montgomery v. Fid. & Guar. Life Ins. Co.*,
    269 Mich. App. 126, 129, 713 N.W.2d 801, 804 (2005)

*Webb v. Progressive Marathon Ins. Co.*,
    335 Mich. App. 503, 508, 967 N.W.2d 841, 844 (2021).

*Zaremba Equip., Inc. v. Harco Nat'l. Ins. Co.*,
    280 Mich. App. 16, 39, 761 N.W.2d 151, 165 (2008)

## <u>INTRODUCTION</u>

After a fire seriously damaged its building and personal property, Plaintiff Charmed Entertainment, LLC ("Plaintiff") submitted a claim for benefits under a commercial property insurance policy issued by Defendant PrimeOne Insurance Company ("PrimeOne"). Alleging that Plaintiff provided false answers to two questions on the applications for insurance regarding the experience of Plaintiff's owners in the subject industry and whether "bouncers, security guards, or door persons" worked on the premises, PrimeOne asserted it was rescinding Plaintiff's policy.

In discovery, Plaintiff deposed Woodrow White, the senior underwriter in charge of Plaintiff's insurance policy. As demonstrated below, Mr. White's testimony conclusively establishes that, even if Plaintiff's answers on the two topics were incorrect, they did not constitute "material" misrepresentations.

Plaintiff now moves for partial summary judgment under Fed.R.Civ.P. 56(a) on PrimeOne's affirmative defense of rescission based on alleged fraudulent procurement. For the reasons presented, PrimeOne has not and cannot meet its burden of proving that the two pertinent answers in the insurance applications were material misrepresentations. Plaintiff's motion for partial summary judgment should be granted.

1

## **STATEMENT OF FACTS**

Plaintiff is a limited liability company that owned an adult entertainment establishment named "Charmed," located at 403 S. Dix St. Detroit Michigan. (O'Neil Declaration, ¶ 2 – Ex. A). Plaintiff opened Charmed in March or April, 2019. (Id., ¶ 4).

Previously, on February 1, 2019, Plaintiff's insurance agent submitted an application for insurance with PrimeOne bearing the e-signature of Rick Geller, an owning member in Plaintiff. (2019 Application – Ex. B). The application provided, in pertinent part, answers to the following questions:

| | |
|---|---|
| **IS THIS A NEW BUSINESS VENTURE?** | Yes |
| **HOW MANY YEARS OF EXPERIENCE DOES THE BUSINESS OWNER HAVE IN THIS INDUSTRY?** | 15 |
| **PREVIOUS OWNERSHIP/MANAGEMENT EXPERIENCE** | |
| **ARE THERE BOUNCERS, SECURITY GUARDS OR DOOR PERSONS ON PREMISES?** | No |

(Id., pp. 3, 6). PrimeOne issued Plaintiff an insurance policy including coverage for the building and Plaintiff's personal property (No. PPK000313777-19).

On January 31, 2020, the agent submitted an application for renewal of the PrimeOne. (2020 Application – Ex. C). This application contains the same answers to the above-quoted questions.  (Id, pp. 3, 6). PrimeOne issued Plaintiff a 2020 insurance policy including coverage for the building and Plaintiff's personal property (No. PPK3002078-20).

On March 19, 2020, while the 2020 policy was in effect, a fire damaged Plaintiff's building and personal property. (ECF No. 1-2, Complaint, ¶¶ 5-6, PageID.9; ECF No. 3, Answer, ¶¶ 5-6, PageID.25-26). Plaintiff timely notified PrimeOne of the loss and submitted a claim. (ECF No. 1-2, Complaint, ¶ 7, PageID.9; ECF No. 3, Answer, ¶ 7, PageID.26).

On July 28, 2021, PrimeOne sent Plaintiff a letter "rescinding" the 2020 insurance policy in effect at the time of the fire loss (No. PPK3002078-20). (PrimeOne 7/28/21 Letter, p. 1 – Ex. D). PrimeOne asserted:

> The rescission is based upon the investigation that followed the fire which damaged the property on March 19, 2020. Our investigation revealed that material misrepresentations were made in the insurance policy application which (PrimeOne) relied upon to issue the referenced insurance policy to Charmed Entertainment, LLC. Specifically, you falsely represented that the owner had more than 15 years of experience in the industry and that no security guards or door persons were used on the premises. However, it has since come to (PrimeOne's) attention that the owner lacked any experience in the industry and used security guards and door persons on a regular basis, which is contrary to the information provided at the time of application.
>
> (PrimeOne's) determination to issue the policy of insurance to Charmed Entertainment, LLC with the coverages and at the premiums afforded, was based, in part, on the representations that the owner had more than 15 years of experience in the industry, and that no security guards or door persons were used on the premises. (PrimeOne) relied to its detriment on the inaccurate assertions made in the application. (Id).

In an August 4, 2021 letter, PrimeOne rescinded Plaintiff's original, 2019 policy (No. PPK0003137-19) based on the same alleged fraud. (PrimeOne 8/4/21 Letter, p.

3

1 – Ex. E). Subsequently, on August 18, 2021, PrimeOne formally denied Plaintiff's claim reasserting the grounds for rescission in the above letters along with additional defenses. (PrimeOne 8/18/21 Letter – Ex. F).

On March 28, 2022, Plaintiff filed a complaint against PrimeOne in Michigan's Wayne County Circuit Court. (ECF No. 1-2, Complaint, PageID.8). Plaintiff requested entry of: a judgment holding PrimeOne liable for damages incurred in the March 19, 2020 fire; an order referring determination of the amount of Plaintiff's loss to appraisal under Mich. Comp. Laws § 500.2833(1)(m); and for other relief. (Id, PageID.11).

Asserting diversity of citizenship jurisdiction, on April 26, 2022, PrimeOne removed the case to this Court. (ECF No. 1, Notice of Removal, PageID.1-4). In its affirmative defenses, PrimeOne alleged, in material part, that Plaintiff fraudulently procured the insurance policy, rendering it "void ab initio." (ECF No. 3, Fifth Affirmative Defense, PageID.32-33).

During discovery, Plaintiff deposed the Woodrow White, the Senior Underwriter for Norse Specialty Insurance Services. (White dep., pp. 1, 7:3-8:11, 10:5-10:6 – Ex. G). Norse serves as the underwriter for PrimeOne's insurance policies. (Id.). Mr. White was the underwriter for Plaintiff's PrimeOne policy. (Id., p. 16:6-16:9).

4

Addressing the first pertinent application question – regarding the years of experience in the industry of Plaintiff's business owner – Mr. White testified that the policy's underwriting requirements were satisfied if either an owner or manager had at least three years of experience in the adult entertainment industry. (White dep., pp. 32:21-33:6, 39:14-39:16 – Ex. G).

While underwriting the risk for Plaintiff's PrimeOne policy, Mr. White contacted Araceli Granados of Plaintiff's insurance agent, the Tabak Insurance Agency. (Id., pp. 31:4-31:13). White asked for more information regarding satisfaction of the industry experience requirement. (Id.). The agent replied that Plaintiff's general manager, Jeremy O'Neil, had successfully managed several similar businesses for a combined period of 15 years, most recently "Chix on Dix" and "Power Strip." (Id., p. 32:1-32:8).

This information provided by the agent was incorrect. Mr. O'Neil did not have 15 years of experience in the adult entertainment industry. He previously co-owned another adult entertainment club, the "Flight Club," for nearly five years. (O'Neil Declaration, ¶ 3 – Ex. A). While he did not operate the club, Mr. O'Neil oversaw its financial books and records. (Id.).

Apparently, in providing information to Mr. White, insurance agent Granados was referring to Darren Lee. Plaintiff hired Mr. Lee to manage the Charmed club in January, 2019. (Lee Declaration, ¶ 2 – Ex. H). At that time, Lee had approximately

5

10 years of experience managing other adult entertainment clubs, including "Chix on Dix," which previously occupied the same premises as Charmed. (Id., ¶ 4; O'Neil Declaration, ¶ 4 – Ex. A).

Moreover, in April, 2019, Plaintiff hired another manager, Robert Lee Brown. (Brown Declaration, ¶¶ 2-3 – Ex. I; O'Neil Declaration, ¶ 5 – Ex. A). At that time, Mr. Brown had approximately 10 years of experience managing the Pantheion Club – another adult entertainment club. (Brown Declaration, ¶ 4 – Ex. I; O'Neil Declaration, ¶ 5 – Ex. A). Mr. Brown remained a manager at Charmed until the March 19, 2020 fire. (O'Neil Declaration, ¶ 5 – Ex. A).

Woodrow White confirmed at his deposition that it did not matter whether an owner or manager had at least three years of adult entertainment industry experience. (White dep., pp. 32:21-33:6, 39:10-39:19 – Ex. G). The policy's underwriting requirements were satisfied if either an owner or manager had the requisite prior experience. (Id).

When asked about the ownership experience question on the insurance applications, Mr. White responded that the question applies to either a "business owner or managers." (Id., p. 55:19-55:23). He added that, in underwriting the policy's risk, "[i]f the principals didn't have any experience, then we would be assuming that they have a manager who has experience who actually has the hands-

6

on, day-to-day operations of the company, and that that manager would be experienced." (Id., p. 30:12-30:19).

When asked about the incorrect information provided by insurance agent Granados, Mr. White replied that:

> It matters that they have the experience. We don't necessarily look up the individual's name. …
>
> Q.    If the name of Jeremy O'Neil was the wrong name and there's another individual or individuals who were the managers that did have the experience, would that have mattered to you or would all you have cared about was if there were managers that had the requisite experience?
>
> A.    I would have cared that there were managers that had the requisite experience, you know, I would care that we had the correct information that comes to us.
>
> Q.    <u>But whether the person with the requisite experience was named Jeremy O'Neil or John Doe, that doesn't matter to you, does it</u>?
>
> A.    <u>That would not stop me from continuing on the risk</u>.
> (Id., pp. 32:14-32:22, 39:5-39:17; emphasis added).

White also emphasized:

> Q.    So from an underwriting standpoint, <u>what you care about as an underwriter is that somebody who is managing the business has at least three years of experience, correct</u>?
>
> A.    <u>Correct</u>.
>
> Q.    <u>And if the business has managers that satisfy that three years of experience, then it meets this underwriting criteria, correct</u>?
>
> A.    <u>Yes</u>. (Id., pp. 32:21-33:6).

7

Addressing the "bouncers, security guards or door persons" question on the insurance applications, Mr. White testified that having these employees would not prevent PrimeOne "from accepting the risk," would not disqualify Plaintiff's business from being insured by PrimeOne, and would "not necessarily" affect the premium. (White dep., pp. 42:6-42:10, 29:12-29:17 – Ex. G). White acknowledged that most adult entertainment establishments employ bouncers, security guards, or door persons. (Id., 42:18-42:22).

Mr. White admitted that employing door persons would not be a "material factor" and would not disqualify an adult entertainment establishment from obtaining PrimeOne insurance. (Id., pp. 35:21-36:17). He further conceded that the only situation that might have materially affected Plaintiff's coverage under the PrimeOne policy was if Plaintiff employed "an extraordinary number" of bouncers or security guards:

> Q.     So give me an example of a situation where having bouncers, security guards or door persons would cause you to reject the risk.
>
> A.     I can't think -- what I would find would be that the numbers of personnel that they might have for bouncers could be like an extraordinary number that causes me to question whether or not they have -- they're in, that they're too rowdy an operation or something like that. That would be the only thing that I would, I could base that on.
>
> Q.     So as long as they didn't have a disproportionate number of bouncers, security guards -- we'll keep door people out of this for this discussion, is that fair?
>
> A.     Right.

8

Q.    <u>If they had a disproportionate number of bouncers or security guards, you may not write it only because if they had to have that many of those types of people, that might cause you to think it's a little bit too rowdy of an operation, correct</u>?

A.    <u>That would be a good way of putting it, yes</u>.

Q.    <u>Absent that example, there's pretty much nothing about having security guards, bouncers or door persons, for that matter, that would prevent a risk from being covered, correct</u>?

A.    <u>Correct</u>. (Id., pp. 44:13-45:12; emphasis added).

Mr. White could not recall ever rejecting a policy based on a business having or not having security guards. (Id., p. 47:4-47:8).[1]

With Woodrow White establishing that neither of the two alleged misrepresentations in the insurance applications were material, Plaintiff now moves for partial summary judgment on Defendant's fraudulent procurement/rescission affirmative defense. For the reasons presented, the motion should be granted.

## <u>MOTION STANDARD</u>

The court shall grant summary judgment on a claim or defense "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The court should

---

[1] As further discussed below, in his Declaration, co-owner Jeremy O'Neil explains that Plaintiff did not employ bouncers, security guards, or door persons, but workers who performed a variety of numerous tasks. (O'Neil Declaration, ¶¶ 6-11 – Ex. A). Of these employees, even on the club's busiest days, at most only one or two worked during a shift (Id., ¶ 6).

9

"consider all facts and inference drawn therefrom in the light most favorable to the nonmovant." *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 480 (6th Cir. 2017) (quoting *City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001)). "The party opposing the motion must show that 'there is a genuine issue for trial' by pointing to evidence on which 'a reasonable jury could return a verdict' for that party." *Smith v. City of Toledo*, 13 F.4th 508, 514 (6th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## ARGUMENT

**SUMMARY JUDGMENT SHOULD BE GRANTED ON PRIMEONE'S FRAUDULENT PROCUREMENT/RESCISSION AFFIRMATIVE DEFENSE BECAUSE, AS A MATTER OF LAW, PRIMEONE CANNOT RAISE A MATERIAL FACT QUESTION THAT TWO ALLEGED MISREPRESENTATIONS IN THE INSURANCE APPLICATIONS WERE MATERIAL.**

Woodrow White's testimony definitively establishes that the two alleged misrepresentations in the insurance applications were not material. Plaintiff's motion for partial summary judgment on PrimeOne's fraudulent procurement/rescission affirmative defense should be granted.

Michigan law has long held that the burden of establishing a right to rescission lies with the party seeking rescission. *Gardner v. Thomas R. Sharp & Sons*, 279 Mich. 467, 469, 272 N.W. 871, 872 (1937).[2] "Rescission is an equitable remedy, not

---

[2] When "federal jurisdiction is based on diversity ... the substantive law of the forum state" governs. *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358 (6th

an absolute right," that is granted only in the sound discretion of the court. *Bazzi v.*

*Sentinel Ins. Co.*, 502 Mich. 390, 408-409, 919 N.W.2d 20, 29-30 (2018). When a

party seeks rescission:

> 'the trial court must balance the equities to determine whether the
> plaintiff is entitled to the relief he or she seeks.' *Johnson v. QFD, Inc*,
> 292 Mich. App. 359, 370 n. 3, 807 N.W.2d 719 (2011). Accordingly,
> courts are not required to grant rescission in all cases. For example,
> 'rescission should not be granted in cases where the result thus obtained
> would be unjust or inequitable,' [*Amster v. Stratton*, 259 Mich. 683,
> 686, 244 N.W. 201, 202 (1932)], or 'where the circumstances of the
> challenged transaction make rescission infeasible,' CJS, § 11, p. 507.

*Bazzi,* 502 Mich. at 410, 919 N.W.2d at 30 (footnotes omitted).

To establish a right to the equitable remedy of rescission, PrimeOne is

required, at a minimum, to prove the existence of a misrepresentation of a material

fact in the application for insurance. *Lake States Ins. Co. v. Wilson*, 231 Mich. App.

327, 331, 586 N.W.2d 113, 115 (1998). A misrepresentation is material if the insurer

would have rejected the risk or charged an increased premium had it been given the

correct information. *Montgomery v. Fid. & Guar. Life Ins. Co.*, 269 Mich. App. 126,

129, 713 N.W.2d 801, 804 (2005). "Rescission abrogates a contract and restores the

parties to the relative positions that they would have occupied if the contract had

never been made." *Bazzi*, *supra*, 502 Mich. at 409, 919 N.W.2d at 29 (citation

omitted).

---

Cir. 2013). Accordingly, Michigan law on PrimeOne's rescission defense governs
in this case.

To establish actionable fraud in the procurement of an insurance policy, PrimeOne bears the burden of proving that Plaintiff (1) made a "material representation"; (2) it was false; (3) Plaintiff knew it was false when it was made, or made it recklessly, without knowledge of its truth; (4) Plaintiff made it with the intent that PrimeOne act upon it; (5) PrimeOne acted in reliance upon it; and (6) PrimeOne was injured. *Webb v. Progressive Marathon Ins. Co.,* 335 Mich. App. 503, 508, 967 N.W.2d 841, 844 (2021). To establish innocent misrepresentation, the PrimeOne must show (1) Plaintiff made a "material representation," (2) the representation was false, (3) Plaintiff made it with the intention of inducing reliance by the claimant, (4) PrimeOne acted in reliance on the representation, and (5) PrimeOne thereby suffered an injury that benefited Plaintiff. *Zaremba Equip., Inc. v. Harco Nat'l. Ins. Co.*, 280 Mich. App. 16, 39, 761 N.W.2d 151, 165 (2008).

As a matter of law, PrimeOne cannot meet its burden of proving that the alleged misrepresentations in the insurance applications regarding the experience of Plaintiff's owners or employment of bouncers, security guards, or door persons were "material." Plaintiff's motion for partial summary judgment on PrimeOne's fraudulent procurement/rescission affirmative defense should be granted.

12

**A.    The inaccurate statement regarding the industry experience of Plaintiff's owner did not constitute a material misrepresentation since, as underwriter White's testimony conclusively establishes, Plaintiff's managers Lee and Brown had more than the requisite three years of experience for issuance of the policy.**

Plaintiff acknowledges that the representation in the insurance applications and email sent by the insurance agent to underwriter White that co-owner O'Neil had 15 years of experience in the adult entertainment industry was incorrect. Mr. O'Neil previously co-owned another adult entertainment establishment for nearly five years, not 15. (O'Neil Declaration, ¶ 3 – Ex. A).  Moreover, while O'Neil oversaw the records of the Flight Club, he did not previously operate an adult entertainment establishment. (Id.).

Although Plaintiff's representation was incorrect, the testimony of Woodrow White, who underwrote Plaintiff's policy on PrimeOne's behalf, conclusively establishes that the representation was not material and, accordingly, as a matter of law, cannot support PrimeOne's fraudulent procurement/rescission affirmative defense. White unequivocally testifies that the policy's underwriting requirements were satisfied if either an owner **or** manager had at least three years of experience in the adult entertainment industry. (White dep., pp. 32:21-33:6, 39:14-39:16 – Ex. G).

It is unrebutted that, when Plaintiff submitted the first insurance policy application on February 1, 2019, Plaintiff had already hired Darren Lee to manage

the Charmed club. (Lee Declaration, ¶ 2 – Ex. H). At that time, Lee had approximately 10 years of experience managing other adult entertainment clubs, including "Chix on Dix," which previously occupied the same premises as Charmed. (Id., ¶ 4; O'Neil Declaration, ¶ 4 – Ex. A). This was more than three-times greater than the PrimeOne policy's minimum experience requirement.

It is additionally unrebutted that, when Plaintiff submitted the second insurance application on January 31, 2020, Plaintiff employed Robert Lee Brown as a manager. (Brown Declaration, ¶¶ 2-3 – Ex. I; O'Neil Declaration, ¶ 5 – Ex. A). At that time, Mr. Brown had approximately 10 years of experience managing the Pantheion Club – another adult entertainment club. (Brown Declaration, ¶ 4 – Ex. I; O'Neil Declaration, ¶ 5 – Ex. A). Once again, this was more than three-times greater than the PrimeOne policy's minimum experience requirement.

Mr. White's testimony definitively establishes that, because managers Lee and Brown undisputedly had far more than the three-years of industry experience necessary for PrimeOne to insure Plaintiff's business, neither the incorrect application answer nor the insurance agent's mistaken email listing Mr. O'Neil as the experienced person who previously managed "Chix on Dix" at the same location were in any way material. White confirmed at his deposition that it did not matter whether an owner or manager had at least three years of adult entertainment industry experience. (White dep., pp. 32:21-33:6, 39:10-39:17 – Ex. G).

14

Indeed, Mr. White admits that the question on the application about prior industry experience applies to either a "business owner or managers." (Id., p. 55:19-55:23). He added that, in underwriting the policy's risk, "[i]f the principals didn't have any experience, then we would be assuming that they have a manager who has experience who actually has the hands-on, day-to-day operations of the company, and that that manager would be experienced." (Id., p. 30:12-30:19). Mr. White is equally clear that the insurance agent's mistaken identification of owner O'Neil, instead of Mr. Lee, as the representative with extensive prior industry experience made no difference as long as the three-year requirement was met. (Id., pp. 32:14-33:6, 39:5-39:17; emphasis added).

Given the specific concessions of the policy's underwriter, as a matter of law, PrimeOne cannot raise a material fact question that Plaintiff's answer to the industry experience question on the insurance applications constituted a material misrepresentation. White's testimony conclusively rebuts the contention, in PrimeOne's July 28, 2021 and August 4, 2021 "rescission" letters, that it "relied to its detriment on the inaccurate assertions made in the application." (PrimeOne 7/28/21 Letter, p. 1 – Ex. D; PrimeOne 8/4/21 Letter, p. 1 – Ex. E).

PrimeOne has not met its burden of proving the essential "materiality" element of its fraudulent procurement affirmative defense. As a matter of law, PrimeOne is not entitled to rescind the policy. Plaintiff's motion for partial summary

15

judgment on PrimeOne's fraudulent procurement/rescission affirmative defense should be granted.

### B.   PrimeOne has not met its burden of proving that Plaintiff's representation that no "bouncers, security guards, or door persons" were on the premises constituted a material misrepresentation warranting rescission of the policy.

PrimeOne also has not met its burden of proving that Plaintiff's answer to the "bouncers, security guards, or door persons" question on the insurance applications constituted a material misrepresentation justifying rescission of the policy. For this additional reason, Plaintiff's motion for partial summary judgment on the fraudulent procurement/rescission defense should be granted.

As specified in co-owner Jeremy O'Neil's declaration, the male employees PrimeOne apparently claims were "bouncers, security guards, or door persons" performed a number of various tasks at Plaintiff's club, "including stocking the bar; cleaning up; running errands; parking and moving cars (after the club ended its relationship with a separate valet service); collecting cover charges and checking IDs (a job also frequently performed by dancers); and escorting female employees to their cars." (O'Neil Declaration, ¶ 6 – Ex. A). The employees "did not carry weapons," and "were not wearing any uniform or clothing identifying them as security personnel …." (Id., ¶ 8). They "were never involved in a fight or altercation with a customer." (Id., ¶ 9). As such, Plaintiff did not consider these employees to be "bouncers, security guards, or door persons." (Id., ¶¶ 8, 10).

16

Mr. O'Neil explains that his use of the word "bouncers" at one point during his examination under oath did not resolve the issue:

> During my examination under oath, at one point, I stated that 'Bouncers outside walked every girl to the car.' Counsel for PrimeOne Insurance Company did not ask me any follow-up question or ask me to explain what I meant when I used the term 'bouncer.' If I had been asked, I would have explained that these workers performed many functions and were not considered to be bouncers or security guards. (O'Neil Declaration, ¶ 10 – Ex. A).

Mr. O'Neil further indicates that:

> Charmed Entertainment, LLC's payroll records referenced the individuals referred to in paragraph 6 above as 'security.' This term was used for accounting identification purposes to distinguish these employees from other workers. …
>
> At no time during my examination under oath or at any other time during the claims process was I ever asked to describe the job duties of those employees identified as "security" in our payroll records. Had I been asked I would have provided the information set forth above. (Id., ¶¶ 7, 11).

This evidence demonstrates that Plaintiff's answer in the applications that no "bouncers, security guards, or door persons" were on the premises was not a misrepresentation. Yet, even if PrimeOne could raise a fact question on the issue of falsity, the testimony of underwriter Woodrow White establishes, as a matter of law, that the representation was not "material." His testimony again establishes that PrimeOne cannot meet its burden of proof on the fraudulent procurement/rescission defense.

17

Mr. White conceded that having these employees on the premises would not prevent PrimeOne "from accepting the risk," and would not disqualify Plaintiff's business from being insured by PrimeOne. (White dep., pp. 42:6-42:10, 29:12-29:17 – Ex. G). White acknowledged that most adult entertainment establishments employ bouncers, security guards, or door persons. (Id., 42:18-42:22). Mr. White could not recall ever rejecting a policy based on a business having or not having security guards. (Id., p. 47:4-47:8).

In particular, Mr. White admitted that employing door persons would not be a "material factor" and would not disqualify an adult entertainment establishment from obtaining PrimeOne insurance. (Id., pp. 35:21-36:17). This resolves the "door persons" issue.

Mr. O'Neil's unrebutted declaration proves Plaintiff did not employ or utilize "security guards" on the premises. Even more, Mr. White conceded that the only situation that might have materially affected Plaintiff's coverage under the PrimeOne policy was if Plaintiff employed "an extraordinary number" of "bouncers" or "security guards." (Id., pp. 44:13-45:12). Jeremy O'Neil is clear that, even if the subject employees were "bouncers," only one or two at a time would work a shift – even on the club's busiest days. (O'Neil Declaration, ¶ 6 – Ex. A). This fact, as a matter of law, proves that the "bouncer" issue was not material.

18

As before, Mr. White's testimony rebuts PrimeOne's presuit allegation that it relied to its "detriment on the inaccurate assertions made in the application." (PrimeOne 7/28/21 Letter, p. 1 – Ex. D; PrimeOne 8/4/21 Letter, p. 1 – Ex. E). White is clear that neither of the two representations in the insurance application were material.

When asked whether the "bouncers, security guards, door persons" issue affected the amount of premium paid, White responded: "not necessarily." (White dep., p. 29:16-29:17 – Ex. G). When later asked by PrimeOne's attorney whether the presence of these workers would have affected the premium charged, White responded: "it could … or not." (Id., pp. 50:25-51:6; emphasis added).

As demonstrated above, PrimeOne has the burden of proving the elements of rescission based on fraudulent procurement. While proof that PrimeOne would have charged a higher premium may support the rescission claim, PrimeOne has not provided any such proof. After exhaustively explaining that the "bouncer, security guard, and door person issue" was not material, White would not support PrimeOne's argument that, but for the representation, PrimeOne would have charged a higher premium. To the contrary, White would only state, in sequence, that the issue would "not necessarily," "could," or could "not" have affected the premium. (See above).

19

Michigan law is clear that a causation argument must be based on more than mere speculation or conjecture. *Skinner v. Square D Co.*, 445 Mich 153, 164, 516 N.W.2d 475, 480 (1994). If PrimeOne's own underwriter of this policy cannot say whether the representations, even if false, would have resulted in an increased premium, then, as a matter of law, PrimeOne's rescission defense fails.

## <u>CONCLUSION</u>

For the reasons presented, PrimeOne has failed to meet its burden of proving the elements of fraudulent procurement warranting rescission of the policy. Plaintiff's motion for partial summary judgment on PrimeOne's fraudulent procurement/rescission affirmative defense should be granted.

Respectfully submitted,

FABIAN, SKLAR & KING, P.C.

*/s/ Stuart A. Sklar*

By:   _____

Stuart A. Sklar (P38146)
Attorneys for Plaintiff
33450 W. 12 Mile Road
Farmington Hills, MI 48331
(248) 553-2000
ssklar@fabiansklar.com

Dated:  November 4, 2022

## <u>CERTIFICATE OF SERVICE</u>

Susan Harwell-Okerstrom certifies and affirms that on November 4, 2022, she caused a copy of the foregoing document to be served upon all parties of record electronically via the United States District Court's CM/ECF system, and via U.S. Mail to any counsel not registered to receive electronic copies from the court.

I further certify, under the penalty of perjury, that the facts contained herein are true to the best of my information, knowledge and belief.

 /s/ Susan Harwell-Okerstrom
 Susan Harwell-Okerstrom
 sharwell@fabiansklar.com