

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARMED ENTERTAINMENT, LLC,
A Michigan corp.,

Plaintiff,

v.

Case No. 2:22-CV-10893-LJM-JJCG
Hon. Laurie J. Michelson
Mag. Jonathan J.C. Grey

PRIMEONE INSURANCE COMPANY,
A foreign corp.

Defendant.
_____/

## DECLARATION OF JEREMY O'NEIL

Pursuant to 28 U.S.C. §1764, I hereby declare as follows:

1. I am over the age of 18 and have personal knowledge of the facts contained in this Declaration.

2. I was a member of Charmed Entertainment, LLC. Charmed Entertainment LLC operated Charmed, a gentlemen's club at 403 S. Dix Street in Detroit, Michigan.

3. Before acquiring an ownership interest in Charmed Entertainment, LLC, for nearly five years, I was a co-owner of the Flight Club gentlemen's club. Although I did not operate the Flight Club, I oversaw its financial books and records.

4. In January 2019, Charmed Entertainment, LLC hired Darren Lee to manage Charmed. At the time he was hired, Mr. Lee had approximately 10 years of

1

experience managing other adult entertainment clubs, including Chix on Dix, which previously occupied the same premises as Charmed. Mr. Lee assisted in the start up of Charmed, which opened in approximately March or April of 2019. Mr. Lee continued to work as a manager at Charmed for about a year.

5. In April 2019, Charmed Entertainment, LLC hired Robert Lee Brown as another manager at Charmed. At the time he was hired, Mr. Brown had approximately 10 years of experience managing the Pantheion Club – another adult entertainment club. Mr. Lee continued to work as a manager at Charmed until the fire of March 19, 2020.

6. From the time it opened for business to the date of the fire, Charmed Entertainment, LLC employed bartenders, servers, DJs, and dancers. Charmed Entertainment, LLC also employed male workers as who performed various tasks including stocking the bar; cleaning up; running errands; parking and moving cars (after the club ended its relationship with a separate valet service); collecting cover charges and checking IDs (a job also frequently performed by dancers); and escorting female employees to their cars. These male employees would only work on the club's busiest days. Only one or two were present during a shift.

7. Charmed Entertainment, LLC's payroll records referenced the individuals referred to in paragraph 6 above as "security." This term was used for accounting identification purposes to distinguish these employees from other

workers.

8. The individuals referenced above were not employed as "security guards," "bouncers" or "door persons." They did not carry weapons, were not wearing any uniform or clothing identifying them as security personnel, and at no time did the management of Charmed consider them to be "security guards," "bouncers," or door persons" because they did not perform the duties typically performed by those categories of employees.

9. The club's employees were never involved in a fight or altercation with a customer. The police were not called to the club.

10. During my examination under oath, at one point, I stated that "Bouncers outside walked every girl to the car." Counsel for PrimeOne Insurance Company did not ask me any follow-up question or ask me to explain what I meant when I used the term "bouncer." If I had been asked, I would have explained that these workers performed many functions and were not considered to be bouncers or security guards.

11. At no time during my examination under oath or at any other time during the claims process was I ever asked to describe the job duties of those employees identified as "security" in our payroll records. Had I been asked I would have provided the information set forth above.

3

12. If called as a witness, I will testify to the truth of the matters asserted in this Declaration.

**I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.**

Executed within the United States on November 3, 2022

_____
Jeremy O'Neil

4