UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARMED ENTERTAINMENT, LLC,
A Michigan corp.,

               Plaintiff,

                             Case No. 2:22-CV-10893-LJM-JJCG

v.                               Hon. Laurie J. Michelson

                             Mag. Jonathan J.C. Grey

PRIMEONE INSURANCE COMPANY,
A foreign corp.

               Defendant.

_____/

Stuart A. Sklar (P38146)
**Fabian, Sklar, King & Liss, P.C.**
Attorneys for Plaintiffs
33450 W. Twelve Mile Road
Farmington Hills, MI 48331
(248) 553-2000
ssklar@fabiansklar.com

David J. Berkal (P39098)
**The Berkal Law Firm**
Attorneys for Defendant
436 S. Broadway, Suite C
Lake Orion, MI 48362
(248) 552-1900
dberkal@berkallaw.com

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

LOCAL RULE CERTIFICATION: I, Stuart A. Sklar, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type

size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length under Local Rule 7.1(d)(3).

Plaintiff, by counsel, Fabian, Sklar, King & Liss, responds to Defendant PrimeOne Insurance Company's motion for summary judgment. For the reasons presented in Plaintiff's brief in opposition, Plaintiff respectfully requests that this Honorable Court deny Defendant PrimeOne Insurance Company's motion for summary judgment.

Respectfully submitted,

FABIAN, SKLAR, KING & LISS, P.C.

/s/ Stuart A. Sklar

By: _____

Stuart A. Sklar (P38146)
Attorneys for Plaintiff
33450 W. 12 Mile Road
Farmington Hills, MI 48331
(248) 553-2000
ssklar@fabiansklar.com

Dated:  December 5, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARMED ENTERTAINMENT, LLC,
A Michigan corp.,

                    Plaintiff,

                                   Case No. 2:22-CV-10893-LJM-JJCG
v.                                   Hon. Laurie J. Michelson
                                   Mag. Jonathan J.C. Grey

PRIMEONE INSURANCE COMPANY,
A foreign corp.

                    Defendant.
_____/
Stuart A. Sklar (P38146)
**Fabian, Sklar, King & Liss, P.C.**
Attorneys for Plaintiffs
33450 W. Twelve Mile Road
Farmington Hills, MI 48331
(248) 553-2000
ssklar@fabiansklar.com

David J. Berkal (P39098)
**The Berkal Law Firm**
Attorneys for Defendant
436 S. Broadway, Suite C
Lake Orion, MI 48362
(248) 552-1900
dberkal@berkallaw.com
_____/

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   i

COUNTER-STATEMENT OF ISSUE PRESENTED . . . . . . . . . . . . . . . . . . .   iii

CONTROLLING AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iv

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

COUNTER-STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

MOTION STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

      **PRIMEONE'S MOTION FOR SUMMARY JUDGMENT
      SHOULD BE DENIED BECAUSE PRIMEONE HAS NOT
      MET ITS INTIAL BURDEN, AS THE MOVING PARTY,
      OF SUPPORTING ITS POSITION WITH SPECIFIC
      CITATIONS TO RECORD EVIDENCE AND HAS NOT
      MET ITS ADDITIONAL BURDEN OF PROVING THAT,
      AS A MATTER OF LAW, THE INFORMATION
      PROVIDED IN PLAINTIFF'S INSURANCE APPLICATION
      CONSTITUTED A MATERIAL MISREPRESENTATION
      JUSTIFYING RESCISSION OF THE INSURANCE POLICY.** . . . . .   11

      **A.**    **By failing to provide a single "pincite to specific record
            evidence" supporting its argument that the alleged
            inaccurate statements in the insurance application
            constituted material misrepresentations, PrimeOne
            has totally failed to meet its initial burden under
            Rule 56 and violated this Court's Case Management
            Order.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

**B.**    **PrimeOne's Underwriting Guidelines and the testimony of underwriter White and PrimeOne COO Jarvis conclusively establish that Plaintiff's incorrect information regarding owner experience was not material since the extensive experience of Plaintiff's managers Lee and Brown more than satisfied PrimeOne's requirements for issuance and maintenance of the policy.** ............................. 17

**C.**    **PrimeOne has not met its burden of proving that Plaintiff's representation that no "bouncers, security guards, or door persons" were on the premises constituted a material misrepresentation warranting rescission of the policy.** ................................. 21

CONCLUSION ............................................. 25

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>Cases Cited</u>

*Amster v. Stratton*, 259 Mich. 683, 244 N.W. 201 (1932) . . . . . . . . . . . . . .   12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . .   10

*Bazzi v. Sentinel Ins. Co.*, 502 Mich. 390, 919 N.W.2d 20 (2018) . . . . . . . .   12,13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . 10,11,14,16

*City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581 (6th Cir. 2001) . . . .   10

*Conlin v. Mortg. Elec. Registration Sys., Inc.*,
    714 F.3d 355, 358 (6th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*Gardner v. Thomas R. Sharp & Sons*,
    279 Mich. 467, 272 N.W. 871 (1937) . . . . . . . . . . . . . . . . . . . . . . . . .   12

*Johnson v. QFD, Inc*, 292 Mich. App. 359, 807 N.W.2d 719 (2011) . . . . . .   12

*Lake States Ins. Co. v. Wilson*,
    231 Mich. App. 327, 586 N.W.2d 113 (1998)0020. . . . . . . . . . . . . . .   12

*Montgomery v. Fid. & Guar. Life Ins. Co.*,
    269 Mich. App. 126, 713 N.W.2d 801 (2005) . . . . . . . . . . . . . . . . . .   12-13

*Rodgers v. Banks,* 344 F.3d 587 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . .   10

*Skinner v. Square D Co.*, 445 Mich 153, 516 N.W.2d 475 (1994) . . . . . . . .   25

*Smith v. City of Toledo*, 13 F.4th 508 (6th Cir. 2021) . . . . . . . . . . . . . . . . .   10

*Sumpter v. Wayne Cnty.*, 868 F.3d 473 (6th Cir. 2017) . . . . . . . . . . . . . . . .   10

*Surles v. Andison*, 678 F.3d 452 (6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . .   11

i

*Webb v. Progressive Marathon Ins. Co.,*
    335 Mich. App. 503, 967 N.W.2d 841 (2021) . . . . . . . . . . . . . . . . . .   13

*Zaremba Equip., Inc. v. Harco Nat'l. Ins. Co.,*
    280 Mich. App. 16, 761 N.W.2d 151 (2008) . . . . . . . . . . . . . . . . . .   13

**Rule Cited**

Fed.R.Civ.P. 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed.R.Civ.P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1,10

**Other Authority Cited**

10A Charles Alan Wright & Arthur R. Miller,
    Federal Practice and Procedure § 2727.1
    (4th ed. updated Apr. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

CJS, § 11, p. 507 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

## <u>COUNTER-STATEMENT OF ISSUE PRESENTED</u>

Whether PrimeOne's motion for summary judgment should be denied because PrimeOne has not met its initial burden, as the moving party, of supporting its position with specific citations to record evidence and has not met its additional burden of proving that, as a matter of law, the information provided in Plaintiff's insurance application constituted a material misrepresentation justifying rescission of the insurance policy.

Plaintiff answers "Yes"

Defendant PrimeOne answers "No"

The Court should answer "Yes"

## <u>CONTROLLING AUTHORITY</u>

Fed.R.Civ.P. 56(a)

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)

*Gardner v. Thomas R. Sharp & Sons*,
    279 Mich. 467, 469, 272 N.W. 871, 872 (1937)

*Bazzi v. Sentinel Ins. Co.*,
    502 Mich. 390, 408-409, 919 N.W.2d 20, 29-30 (2018)

*Lake States Ins. Co. v. Wilson*,
    231 Mich. App. 327, 331, 586 N.W.2d 113, 115 (1998)

*Montgomery v. Fid. & Guar. Life Ins. Co.*,
    269 Mich. App. 126, 129, 713 N.W.2d 801, 804 (2005)

*Webb v. Progressive Marathon Ins. Co.*,
    335 Mich. App. 503, 508, 967 N.W.2d 841, 844 (2021).

*Zaremba Equip., Inc. v. Harco Nat'l. Ins. Co.*,
    280 Mich. App. 16, 39, 761 N.W.2d 151, 165 (2008)

**INTRODUCTION**

Defendant PrimeOne Insurance Company ("PrimeOne") moves for summary judgment under Fed.R.Civ.P. 56(a) arguing that, as a matter of law, two answers in Plaintiff's application for insurance – regarding the business experience of Plaintiff's ownership and whether Plaintiff employed bouncers, security guards or door persons – constituted material misrepresentations entitling PrimeOne to rescind the insurance policy in effect at the time of the March 19, 2020 fire.

In violation of its initial burden under Rule 56(a) to identify portions of the record which it claims support summary judgment, and in violation of the requirement in this Court's June 1, 2022 Case Management Order mandating that it support each factual allegation with a "pincite to specific record evidence," (ECF No. 10, PageID.98, ¶ 8a), PrimeOne fails to provide even one specific record citation supporting its argument that Plaintiff's application answers were material misrepresentations. PrimeOne's patent failure to satisfy its burden as the moving party under Rule 56 and the requirements of the Court's Case Management Order necessitates that its motion for summary judgment be summarily denied.

Even if its motion is considered on the merits, PrimeOne utterly fails to establish that Plaintiff's two application answers constituted material misrepresentations. While Plaintiff acknowledges the answer regarding experience of its ownership was incorrect, PrimeOne's own Underwriting Guidelines, coupled

1

with the testimony of underwriter White and COO Jarvis, conclusively establishes that the answer was not a material misrepresentation because the extensive, successful experience of Plaintiff's managers more than satisfied PrimeOne's requirements. As also demonstrated below, Plaintiff's application answer regarding bouncers, security guards and door persons was neither a misrepresentation nor had any material effect on PrimeOne issuing the policy or on the premium charged. Accordingly, PrimeOne's motion for summary judgment should be denied.

## COUNTER-STATEMENT OF FACTS

In addition to the material facts set forth in its motion for partial summary judgment, Plaintiff responds to the numbered paragraphs in PrimeOne's statement of facts, stating:

1.      Admitted.

2.      Admitted.

3.      Admitted Jeremy O'Neil is the sole member of Red Lemon, LLC.

4.      Admitted.

5.      Admitted.

6.      Denied that Richard Geller submitted the insurance application. The application was submitted by the Tabak Insurance Agency. (Geller EUO, p. 15:3-15:9 – Exhibit A). Mr. Geller authorized Tabak to place his e-signature on the application. (Id., p. 15:10-15:18).

2

7.     Admitted the application stated that Plaintiff had 15 years of experience in the industry. The application answered "no" to whether there were "bouncers, security guards or door persons on premises."

8.     Admitted that, on January 30, 2019, PrimeOne's underwriter, Woodrow White, requested additional information from Plaintiff's insurance agent. PrimeOne omits the language of Mr. White's specific request, which stated:

> The application should contain specific details of the lnsured's experience in either ownership and/or managing  this kind of business to satisfy the New Venture underwriting criteria. <u>An Acceptable explanation would be as  follows</u>:
> o      The (owner's name) has previously owned ABC ___ for the period of January ___ through December ___  with a successful track record of profitable results or
> o      <u>The (name of the manager ___ on behalf of the Insured ___) has successfully managed ABC ___ for a period of 5-years with a  successful  track  record  of  managing  this  type  of operation</u>. (ECF   No.   18-10,   White   1/30/19   Email, PageID.330; emphasis added).

9.     Admitted.

10.    Admitted that PrimeOne issued Plaintiff a policy on February 1, 2019 and a renewal policy on February 1, 2020. The renewal policy was in effect at the time of the March 19, 2020 fire.

11.    Admitted that, on March 19, 2020, a fire damaged Plaintiff's business. PrimeOne's reference to the proximity of the fire to the COVID emergency shutdown is irrelevant. PrimeOne has never alleged that Plaintiff's owners were responsible, in any way, for causing the fire.

3

12.     Admitted that the information provided in the application and insurance agent's January 30, 2019 email regarding the industry experience of Plaintiff's ownership was not correct. PrimeOne, however, has failed to meet its burden of proving that Plaintiff's incorrect statements regarding the industry experience of its owners were material and constitute grounds to rescind the policy.

PrimeOne omits that its own Underwriting Guidelines disqualify from coverage "New Ventures" "Without previous ownership experience of 3 complete years … **or** Without previous management experience of 3 years with in the same business segment …." (ECF No. 18-17, PrimeOne Underwriting Manual & Guidelines, PageID.680; emphasis added). PrimeOne further omits (a) the concession of its underwriter, Woodrow White, that the policy's underwriting requirements were satisfied if either an owner **or** manager had at least three years of experience in the adult entertainment industry, (ECF No. 17-8, White dep., pp. 10:2-10:6, 32:21-33:6, 39:14-39:16, PageID.206, 228, 229, 235), and (b) the admission of its chief operating officer ("COO"), Eric Jarvis, that "[i]f the application said that the management had the requisite experience … and that were verified, that would be satisfactory," (ECF No. 18-16, Jarvis dep., pp. 5:22-6:11, 38:1-38:8, PageID.639, 647).

When asked about the ownership experience question on the insurance applications, PrimeOne's underwriter, Woodrow White, responded that the question

4

applies to <u>either a "business owner or managers</u>." (ECF No. 17-8, White dep., p. 55:19-55:23, PageID.251; emphasis added). He added that, in underwriting the policy's risk, "[i]f the principals didn't have any experience, then we would be assuming that they have a manager who has experience who actually has the hands-on, day-to-day operations of the company, and that that manager would be experienced." (Id., p. 30:12-30:19, PageID.226).

When asked about the incorrect information provided by the Tabak Insurance Agency, Mr. White replied that:

> It matters that they have the experience. We don't necessarily look up the individual's name.…
>
> Q.     If the name of Jeremy O'Neil was the wrong name and there's another individual or individuals who were the managers that did have the experience, would that have mattered to you or would all you have cared about was if there were managers that had the requisite experience?
>
> A.     I would have cared that there were managers that had the requisite experience, you know, I would care that we had the correct information that comes to us.
>
> Q.     <u>But whether the person with the requisite experience was named Jeremy O'Neil or John Doe, that doesn't matter to you, does it</u>?
>
> A.     <u>That would not stop me from continuing on the risk</u>.
> (Id., pp. 32:14-32:22, 39:5-39:17, PageID.228, 235; emphasis added).

White also emphasized:

> Q.     <u>So from an underwriting standpoint, what you care about as an underwriter is that somebody who is managing the business has at least three years of experience, correct</u>?

5

A.    <u>Correct</u>.

Q.    <u>And if the business has managers that satisfy that three years of experience, then it meets this underwriting criteria, correct</u>?

A.    <u>Yes</u>. (Id., pp. 32:21-33:6, PageID.228-229; emphasis added).

Plaintiff unquestionably satisfied PrimeOne's underwriting requirement of employing a manager with at least three years of industry experience. Before submission of the application, Plaintiff had hired Darren Lee who, at the time, had a successful track record of managing other adult entertainment clubs for approximately 10 years – including "Chix on Dix," which Mr. Lee successfully managed at the same premises as Charmed. (O'Neil Supplemental Declaration, ¶ 3 – Exhibit B; ECF No. 17-9, Lee Declaration, ¶ 4, PageID.255). In April, 2019, Plaintiff hired another manager, Robert Lee Brown, who, at the time, had approximately 10 years of experience successfully managing the Pantheion Club – another adult entertainment club. (O'Neil Supplemental Declaration, ¶ 4 – Exhibit B; ECF No. 17-10, Brown Declaration, ¶¶ 2-4, PageID.258). Mr. Brown remained a manager at Charmed until the March 19, 2020 fire. (O'Neil Supplemental Declaration, ¶ 4 – Exhibit B).

Since PrimeOne concedes that employment of a manager with at least three years of experience managing an adult entertainment club satisfied the underwriting requirements for the policy and since, at all times pertinent, Plaintiff employed

managers (Lee and Brown) with at least 10 years of experience successfully managing adult entertainment clubs, Plaintiff asserts that, as a matter of law, PrimeOne has not met its burden of proving that the inaccuracy in the insurance application regarding ownership experience was a material misrepresentation and constitutes grounds to rescind the policy.

PrimeOne also has failed to meet its burden of proving that Plaintiff's application response regarding "bouncers, security guards or door persons" was a material misrepresentation justifying rescission of the policy. Plaintiff denies PrimeOne's allegation that the application falsely represented information concerning "the use of bouncers, security guards or door persons on premises." PrimeOne omits the testimony of its COO, Eric Jarvis, that PrimeOne defines a security guard as a "person whose <u>primary responsibility</u> is to provide security to the premises," or whose <u>primary responsibility</u> is "to regulate the entry of patrons or potential patrons into the establishment." (ECF No. 18-16, Jarvis dep., pp. 56:20-56:24, 58:22-58:25, PageID.651-652; emphasis added).

The employees PrimeOne alleges were "bouncers, security guards or door persons" did not meet Mr. Jarvis' definitions. As Plaintiff's managing member, Jeremy O'Neil, explains, these employees "performed various tasks including stocking the bar; cleaning up; running errands; parking and moving cars (after the club ended its relationship with a separate valet service); collecting cover charges

and checking IDs (a job also frequently performed by dancers); and escorting female employees to their cars." (ECF No. 17-2, O'Neil Declaration, ¶ 6, PageID.162). These employees did not have the "primary responsibility" of "providing security" or regulating "the entry of patrons or potential patrons into the establishment." (ECF No. 18-16, Jarvis dep., pp. 56:20-56:24, 58:22-58:25, PageID.651-652). Mr. O'Neil states:

> The individuals referenced above were not employed as "security guards," "bouncers" or "door persons." They did not carry weapons, were not wearing any uniform or clothing identifying them as security personnel, and at no time did the management of Charmed consider them to be "security guards," "bouncers," or door persons" because they did not perform the duties typically performed by those categories of employees. (ECF No. 17-2, O'Neil Declaration, ¶ 8, PageID.163).

Aside from not being a misrepresentation, Plaintiff's answer to the "bouncers, security guards or door persons" question on the insurance application <u>was not material</u>. PrimeOne omits underwriter Woodrow White's testimony that having these employees would not prevent PrimeOne "from accepting the risk," would not disqualify Plaintiff's business from being insured by PrimeOne, and would "not necessarily" affect the premium. (ECF No. 17-8, White dep., pp. 42:6-42:10, 29:12-29:17, PageID.238, 225). White acknowledged that most adult entertainment establishments employ bouncers, security guards, or door persons. (Id., 42:18-42:22, PageID.238).

Mr. White admitted that employing door persons would not be a "material

8

factor" and would not disqualify an adult entertainment establishment from obtaining PrimeOne insurance. (Id., pp. 35:21-36:17, PageID.231-232). He conceded that the only situation that might have materially affected Plaintiff's coverage under the PrimeOne policy was if Plaintiff employed an "extraordinary" or "disproportionate number" of bouncers or security guards. (Id., pp. 44:13-45:12, PageID.240-241). White further conceded that, "absent that example," there was "nothing about having security guards, bouncers or door persons … that would prevent a risk from being covered." (Id., p. 45:8-45:12, PageID.241).

Jeremy O'Neil is clear that the number of employees PrimeOne alleges were bouncers, security guards, or door persons was not "extraordinary" or "disproportionate." These employees "would only work on the club's busiest days," and "[o]nly one or two were present during a shift." (ECF No. 17-2, O'Neil Declaration, ¶ 6, PageID.162). Underwriter White could not recall ever rejecting a policy based on a business having or not having security guards. (ECF No. 17-8, White dep., p. 47:4-47:8, PageID.243).

13.    PrimeOne accurately cites this policy provision.

14.    Denied that PrimeOne properly rescinded the policy. Once again, PrimeOne has not met its burden of proving that Plaintiff's application answers regarding ownership experience or employment of "bouncers, security guards or door persons" constituted material misrepresentations.

9

## MOTION STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); see also *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). "The party opposing the motion must then show that 'there is a genuine issue for trial' by pointing to evidence on which 'a reasonable jury could return a verdict' for that party." *Smith v. City of Toledo*, 13 F.4th 508, 514 (6th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The court should "consider all facts and inference drawn therefrom in the light most favorable to the nonmovant." *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 480 (6th Cir. 2017) (quoting *City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001)). "In cases where the party moving for summary judgment also bears the burden of persuasion at trial, the party's initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free

to disbelieve it." *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012) (internal quotation marks omitted). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp., supra*, 477 U.S. at 322-23. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id*.

## ARGUMENT

**PRIMEONE'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE PRIMEONE HAS NOT MET ITS INTIAL BURDEN, AS THE MOVING PARTY, OF SUPPORTING ITS POSITION WITH SPECIFIC CITATIONS TO RECORD EVIDENCE AND HAS NOT MET ITS ADDITIONAL BURDEN OF PROVING THAT, AS A MATTER OF LAW, THE INFORMATION PROVIDED IN PLAINTIFF'S INSURANCE APPLICATION CONSTITUTED A MATERIAL MISREPRESENTATION JUSTIFYING RESCISSION OF THE INSURANCE POLICY.**

PrimeOne has failed to satisfy either of its burdens. First, PrimeOne has utterly failed to satisfy its initial burden, as the moving party under Rule 56 and this Court's Case Management Order, of providing specific citations to record evidence supporting its argument. Second, PrimeOne has not met its burden of proving, as a matter of law, that Plaintiff's two application answers constituted material misrepresentations justifying rescission of the insurance policy. PrimeOne's motion

11

for summary judgment should be denied.

Michigan law has long held that the burden of establishing a right to rescission lies with the party seeking rescission. *Gardner v. Thomas R. Sharp & Sons*, 279 Mich. 467, 469, 272 N.W. 871, 872 (1937).[1] "Rescission is an equitable remedy, not an absolute right," that is granted only in the sound discretion of the court. *Bazzi v. Sentinel Ins. Co.*, 502 Mich. 390, 408-409, 919 N.W.2d 20, 29-30 (2018). When a party seeks rescission:

> 'the trial court must balance the equities to determine whether the plaintiff is entitled to the relief he or she seeks.' *Johnson v. QFD, Inc*, 292 Mich. App. 359, 370 n. 3, 807 N.W.2d 719 (2011). Accordingly, courts are not required to grant rescission in all cases. For example, 'rescission should not be granted in cases where the result thus obtained would be unjust or inequitable,' [*Amster v. Stratton*, 259 Mich. 683, 686, 244 N.W. 201, 202 (1932)], or 'where the circumstances of the challenged transaction make rescission infeasible,' CJS, § 11, p. 507.

*Bazzi,* 502 Mich. at 410, 919 N.W.2d at 30 (footnotes omitted).

To establish a right to the equitable remedy of rescission, PrimeOne is required, at a minimum, to prove the existence of a misrepresentation of a material fact in the application for insurance. *Lake States Ins. Co. v. Wilson*, 231 Mich. App. 327, 331, 586 N.W.2d 113, 115 (1998). A misrepresentation is material if the insurer would have rejected the risk or charged an increased premium had it been given the correct information. *Montgomery v. Fid. & Guar. Life Ins. Co.*, 269 Mich. App. 126,

---

[1] Michigan law governs in cases, such as this, based on diversity jurisdiction. *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358 (6th Cir. 2013).

12

129, 713 N.W.2d 801, 804 (2005). "Rescission abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made." *Bazzi, supra*, 502 Mich. at 409, 919 N.W.2d at 29.

To establish actionable fraud in the procurement of an insurance policy, PrimeOne bears the burden of proving that Plaintiff (1) made a "material representation"; (2) it was false; (3) Plaintiff knew it was false when it was made, or made it recklessly, without knowledge of its truth; (4) Plaintiff made it with the intent that PrimeOne act upon it; (5) PrimeOne acted in reliance upon it; and (6) PrimeOne was injured. *Webb v. Progressive Marathon Ins. Co.,* 335 Mich. App. 503, 508, 967 N.W.2d 841, 844 (2021). To establish innocent misrepresentation, the PrimeOne must show (1) Plaintiff made a "material representation," (2) the representation was false, (3) Plaintiff made it with the intention of inducing reliance by the claimant, (4) PrimeOne acted in reliance on the representation, and (5) PrimeOne thereby suffered an injury that benefited Plaintiff. *Zaremba Equip., Inc. v. Harco Nat'l. Ins. Co.*, 280 Mich. App. 16, 39, 761 N.W.2d 151, 165 (2008).

As a matter of law, PrimeOne has not met its initial burden as the moving party under Rule 56 and this Court's Case Management Order or its burden of proving that Plaintiff's insurance application answers regarding ownership experience or employment of bouncers, security guards, or door persons constituted material misrepresentations warranting rescission of the policy. PrimeOne's motion

for summary judgment should be denied.

> **A.** **By failing to provide a single "pincite to specific record evidence" supporting its argument that the alleged inaccurate statements in the insurance application constituted material misrepresentations, PrimeOne has totally failed to meet its initial burden under Rule 56 and violated this Court's Case Management Order.**

At the outset, PrimeOne has utterly failed to satisfy its initial burden under Rule 56 and this Court's June 1, 2022 Case Management Order that Plaintiff committed a material misrepresentation warranting rescission. Accordingly, PrimeOne's motion for summary judgment should be summarily denied.

As quoted above, it is universally established that a party seeking summary judgment under Rule 56 "<u>always bears the initial responsibility</u> of informing the district court of the basis for its motion, and identifying <u>those portions</u>" of the record, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp., supra*, 477 U.S. at 323 (emphasis added). "If the movant fails to make that initial showing, the court must deny the motion, even if the opposing party has not introduced contradictory evidence in response." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. updated Apr. 2020). Moreover, this Court's June 1, 2022 Case Management Order specifies that, for Rule 56 summary judgment motions: "<u>Each statement of fact must be supported with a pincite to specific record evidence</u>." (ECF No. 10, Case Management Order, ¶ 8a, PageID.98; emphasis added).

As demonstrated above, PrimeOne also bears the substantive burden of proving that Plaintiff's two answers in the insurance application constituted "material misrepresentations." PrimeOne's entire argument on the issue of materiality is set forth in one conclusory sentence and one footnote. PrimeOne's conclusory sentence reads: "In the present case, PrimeOne's current Chief Operating Officer, Eric Jarvis, and the line underwriter, Woody White, testified that if the Plaintiff had provided truthful information regarding its business experience and/or security in its application, PrimeOne would have declined to insure the business and/or would have added a surcharge to the premium." (ECF No. 18, PrimeOne's Brief, PageID.276). PrimeOne cites in support of this sweeping allegation the <u>entire</u> deposition transcripts of Woodrow White (56 pages) (PrimeOne's Appendix 14) and Eric Jarvis (68 pages) (PrimeOne's Appendix 15). (Id.). <u>PrimeOne does not cite any specific pages from White's or Jarvis' depositions purportedly supporting its allegation</u>.

PrimeOne's footnote states:

PrimeOne Insurance Company's underwriting guidelines specifically state that adult entertainment; risks with bouncers and new ventures with less than 3 years in business, ownership or comparable management experience will not be eligible for coverage without prior approval. (Appendix 16, PrimeOne Insurance Company's underwriting guidelines.) While the line underwriter, Woody White, confirmed that the exception to a non-eligible risk was approved second to the supplemental information provided by Plaintiff's insurance agent, he was also clear that coverage would have been declined and/or a surcharge would have been charged on the policy if truthful information

15

had been provided. (Appendix 14.) This proposition was confirmed by PrimeOne Insurance Company's COO who, based upon the Company's investigation following the March 19, 2020 fire, confirmed that rescission was appropriate as the Company would not have insured the risk if it had been provided with truthful information. (Appendix 15.) (ECF No. 18, PrimeOne's Brief, footnote 4, PageID.275).

As before, PrimeOne does not cite <u>any</u> specific citations to the record purportedly supporting the allegations that coverage would have been denied or a surcharge imposed if "truthful information has been provided." Instead, as before, PrimeOne merely cites the <u>entire</u> deposition transcripts of Woodrow White (56 pages) (PrimeOne's Appendix 14) and Eric Jarvis (68 pages) (PrimeOne's Appendix 15). (Id.).

In violation of Rule 56, PrimeOne has failed to meet its "initial responsibility" of identifying "those portions" of the record which it believes demonstrate the absence of a material fact question. *Celotex Corp., supra*. In violation of this Court's Case Management Order, PrimeOne failed to provide any "pincite to specific record evidence" supporting its allegation that, if it had received the correct information, it would have rejected coverage or charged a higher premium. PrimeOne's citation of the entire deposition transcripts of Woodrow White and Eric Jarvis does not, and cannot possibly comply with Rule 56 and the Case Management Order.

It is not the job of this Court, or of Plaintiff, to sift through 124 pages of deposition testimony to verify whether PrimeOne has any factual support for its argument that the application answers were material misrepresentations. It was

16

PrimeOne's burden, and not that of the Court of Plaintiff, to cite specific record evidence supporting its argument. PrimeOne's complete failure to provide a single "pincite to specific record evidence" not only demonstrates that its position is meritless, but unavoidably establishes that it has failed to meet its initial burden under Rule 56 and the Court's Case Management Order. PrimeOne's motion for summary judgment must be denied.

> **B.** **PrimeOne's Underwriting Guidelines and the testimony of underwriter White and PrimeOne COO Jarvis conclusively establish that Plaintiff's incorrect information regarding owner experience was not material since the extensive experience of Plaintiff's managers Lee and Brown more than satisfied PrimeOne's requirements for issuance and maintenance of the policy.**

Even if PrimeOne has met its initial burden under Rule 56 and the Court's Case Management order, the record conclusively demonstrates that no material misrepresentation occurred. Plaintiff acknowledges that the representation in the insurance applications and email sent by the insurance agent to underwriter White that co-owner O'Neil had 15 years of experience in the adult entertainment industry was incorrect. (See ECF No. 17-2, O'Neil Declaration, ¶ 3, PageID.161).

Notwithstanding, redundant evidence conclusively establishes that the representation was not material and, accordingly, as a matter of law, cannot support PrimeOne's attempt to rescind the policy. PrimeOne's Underwriting Manual and Guidelines required only a minimum of three years "in the same business segment"

17

by either ownership **or** "management." (ECF No. 18-17, PrimeOne Underwriting Manual & Guidelines, p. 8, PageID.680; emphasis added).

Woodrow White, who underwrote Plaintiff's policy on PrimeOne's behalf, unequivocally confirms that the policy's underwriting requirements were satisfied if either an owner **or** manager had at least three years of experience in the adult entertainment industry. (ECF No. 17-8, White dep., pp. 32:21-33:6, 39:14-39:16, PageID.228-229, 235). PrimeOne chief operating officer, Eric Jarvis, agrees, conceding that "it could be the owner or the manager having the requisite experience with a successful track record." (ECF No. 18-16, Jarvis dep., pp. 5:22-6:9, 39:15-39:19, PageID.639, 647; emphasis added).

It is unrebutted that,[2] when Plaintiff's insurance agent answered Mr. White's email and submitted the insurance policy application, Plaintiff had already hired Darren Lee to manage the Charmed club. (ECF No. 17-9, Lee Declaration, ¶ 2, PageID.255; O'Neil Supplemental Declaration, ¶ 3 – Exhibit B). At that time, Lee had approximately 10 years of experience successfully managing other adult entertainment clubs, including "Chix on Dix," which previously occupied the same

---

[2] Although PrimeOne's Underwriting Guidelines and the testimony of White and Jarvis establish that a minimum of three-years' industry experience of either an owner or manager sufficed, and although PrimeOne has the burden of proving grounds for rescission, it failed to conduct any discovery to determine whether Plaintiff's managers had the requisite experience – *i.e.*, to confirm whether the incorrect representation was, in fact, material.

18

premises as Charmed. (O'Neil Supplemental Declaration, ¶ 3 – Exhibit B; ECF No. 17-9, Lee Declaration, ¶ 4, PageID.255). <u>This was more than three-times greater than the PrimeOne policy's minimum experience requirement</u>.

Clearly, when Plaintiff's agent identified co-owner Jeremy O'Neil as the person with adult entertainment industry experience – including successful prior management of "Chix on Dix" at the same location, he was actually referring to Darren Lee. Woodrow White is clear that the insurance agent's mistaken identification of owner O'Neil, instead of Mr. Lee, as the representative with extensive prior industry experience <u>made no difference as long as the three-year requirement was met</u>. (ECF No. 17-8, White dep., pp. 32:14-33:6, 39:5-39:17, PageID.228-229, 235). By White's own, unequivocal admission, the agent's mistaken email was not a material misrepresentation justifying rescission.

It is additionally unrebutted that, when Plaintiff submitted the second insurance application on January 31, 2020, Plaintiff employed Robert Lee Brown as a manager. (O'Neil Supplemental Declaration, ¶ 4 – Exhibit B; ECF No. 17-10, Brown Declaration, ¶¶ 2-3, PageID.258). At that time, Mr. Brown had approximately 10 years of experience successfully managing the Pantheion Club – another adult entertainment club. (O'Neil Supplemental Declaration, ¶ 4 – Exhibit B; ECF No. 17-10, Brown Declaration, ¶ 4, PageID.258). Once again, <u>this was more than three-times greater than the PrimeOne policy's minimum experience</u>

19

requirement.

PrimeOne's Underwriting Guidelines, along with the testimony of underwriter Woodrow White and PrimeOne's COO Jarvis, definitively establishes that, because managers Lee and Brown had far more than the three-years of industry experience necessary for PrimeOne to insure Plaintiff's business, neither the incorrect application answer nor the insurance agent's mistaken email listing Mr. O'Neil as the experienced person who previously managed "Chix on Dix" at the same location was in any way material. As indicated above, Mr. White confirmed at his deposition that the agent's mistaken email did not matter as long as an owner or manager had at least three years of adult entertainment industry experience. (ECF No. 17-8, White dep., pp. 32:14-33:6, 39:5-39:17, PageID.228-229, 235). PrimeOne's COO Jarvis agreed. (ECF No. 18-16, Jarvis dep., p. 39:15-39:19, PageID.647).

Mr. White further admits that the question on the application about prior industry experience applies to either a "business owner or managers." (ECF No. 17-8, White dep., p. 55:19-55:23, PageID.251). He added that, in underwriting the policy's risk, "[i]f the principals didn't have any experience, then we would be assuming that they have a manager who has experience who actually has the hands-on, day-to-day operations of the company, and that that manager would be experienced." (Id., p. 30:12-30:19, PageID.226). Neither underwriter White, COO

20

Jarvis, or any other PrimeOne representative has claimed that Plaintiff's employment of managers with at least 10 years of successful industry experience would have resulted in a higher charged premium.

Therefore, the statement that Jeremy O'Neil had 15 years of management experience in the adult entertainment industry, including at "Chix on Dix," while incorrect, was not a material misrepresentation. Evidence conclusively establishes that, had the insurance agent given the correct information about manager Darren Lee's successful industry experience (or the successful track record of manager Robert Lee Brown, who was later hired), PrimeOne would not have rejected the risk or increased the premium. *Montgomery, supra*, 269 Mich. App. at 129, 713 N.W.2d at 804 (2005).

PrimeOne has not met its burden of proving it is entitled to rescind the policy. PrimeOne's motion for summary judgment should be denied.

> **C.     PrimeOne has not met its burden of proving that Plaintiff's representation that no "bouncers, security guards, or door persons" were on the premises constituted a material misrepresentation warranting rescission of the policy.**

PrimeOne also has not met its burden of proving that Plaintiff's answer to the "bouncers, security guards, or door persons" question on the insurance applications constituted a material misrepresentation justifying rescission of the policy. For this additional reason, PrimeOne's motion for summary judgment should be denied.

To begin, PrimeOne has not met its burden of proving that this application answer was incorrect. PrimeOne's COO, Eric Jarvis, defines a security guard as a "person whose <u>primary responsibility</u> is to provide security to the premises," or whose <u>primary responsibility</u> is "to regulate the entry of patrons or potential patrons into the establishment." (ECF No. 18-16, Jarvis dep., pp. 56:20-56:24, 58:22-58:25, PageID.651-652; emphasis added). As specified in co-owner Jeremy O'Neil's declaration, Plaintiff did not employ any workers who met that definition. The employees PrimeOne apparently claims were "bouncers, security guards, or door persons" performed a number of various tasks at Plaintiff's club, "including stocking the bar; cleaning up; running errands; parking and moving cars (after the club ended its relationship with a separate valet service); collecting cover charges and checking IDs (a job also frequently performed by dancers); and escorting female employees to their cars." (ECF No. 17-2, O'Neil Declaration, ¶ 6, PageID.162). The employees "did not carry weapons," and "were not wearing any uniform or clothing identifying them as security personnel …." (Id., ¶ 8, PageID.163). They "were never involved in a fight or altercation with a customer." (Id., ¶ 9). As such, Plaintiff did not consider these employees to be "bouncers, security guards, or door persons." (Id., ¶¶ 8, 10). Under PrimeOne's own definition, Plaintiff's statement that it did not employ bouncers, security guards or door persons was not a misrepresentation.

Although it had the initial burden of proof under Rule 56 and the Case

Management Order, as well as the burden to establish grounds for rescission, PrimeOne fails to present any evidence raising a material fact question that Plaintiff's application answer was incorrect. As before, PrimeOne does not support its position with any "pincite to specific record evidence." To the contrary, PrimeOne tries to support this allegation by a global citation to its "Appendix 13, documentation associated with the use of security personnel." (ECF No. 18, PageID.273). PrimeOne's "Appendix 13" is comprised of 59 pages of Plaintiff's banking and payroll records. (ECF No. 18-14, PageID.520-579). As before, PrimeOne cannot meets its burdens of proof by leaving it to the Court and Plaintiff to sift through these records to determine the basis of PrimeOne's position.[3]

PrimeOne fails to present evidence proving that Plaintiff's answer in the applications that no "bouncers, security guards, or door persons" were on the premises was a misrepresentation. Yet, even if PrimeOne could raise a fact question on the issue of falsity, the testimony of underwriter Woodrow White establishes, as

---

[3] To the extent that PrimeOne is relying on references to "security" in its Appendix 13, these records address workers employed after submission of the 2019 insurance application and, as such, are irrelevant to PrimeOne's motion. In addition, as addressed above, Jeremy O'Neil indicates that workers were not primarily employed as bouncers, security, or door persons. (ECF No. 17-2, O'Neil Declaration, ¶¶ 6, 8-10 PageID.162, 163). Had PrimeOne bothered to conduct discovery and ask Mr. O'Neil about this, it would have learned that the term "security" was used for accounting purposes to distinguish these workers from other employees. (Id, ¶¶ 7, 11). PrimeOne, however, did not conduct discovery of Mr. O'Neil <u>or any other Plaintiff employee</u>, and has no evidence proving the representation was incorrect.

a matter of law, that the representation was not "material."

Mr. White conceded that having these employees on the premises would not prevent PrimeOne "from accepting the risk," and would not disqualify Plaintiff's business from being insured by PrimeOne. (ECF No. 17-8, White dep., pp. 42:6-42:10, 29:12-29:17, PageID.238, 224). White acknowledged that most adult entertainment establishments employ bouncers, security guards, or door persons. (Id., 42:18-42:22). Mr. White could not recall ever rejecting a policy based on a business having or not having security guards. (Id., p. 47:4-47:8, PageID.243).

In particular, Mr. White admitted that employing "door persons" would not be a "material factor" and would not disqualify an adult entertainment establishment from obtaining PrimeOne insurance. (Id., pp. 35:21-36:17, PageID.231-232). This resolves the "door persons" issue.

Mr. O'Neil's unrebutted declaration, quoted above, proves Plaintiff did not employ or utilize security guards or bouncers on the premises. Even more, Mr. White conceded that the only situation that might have materially affected Plaintiff's coverage under the PrimeOne policy was if Plaintiff employed an "extraordinary" or "disproportionate number" of "bouncers" or "security guards." (Id., pp. 44:13-45:12, PageID.240-241). Jeremy O'Neil is clear that, even if the subject employees were bouncers or security guards, only one or two at a time would work a shift – even on the club's busiest days. (ECF No. 17-2, O'Neil Declaration, ¶ 6 – Ex. A,

24

PageID.162). This fact, as a matter of law, proves that this issue was not material.

In citing the complete deposition transcripts of White and Jarvis, PrimeOne also fails to provide any specific record citations supporting its contention that, if it knew Plaintiff employed bouncers or security guards, it would have "added a surcharge to the premium." (ECF No. 18, PageID.276). When asked whether the "bouncers, security guards, door persons" issue may have affected the amount of premium paid, White first responded: "not necessarily." (White dep., p. 29:16-29:17 – Ex. G). He later responded: "it could … or not." (Id., pp. 50:25-51:6). This is wholly speculative and insufficient under Michigan law. *Skinner v. Square D Co.*, 445 Mich. 153, 164, 516 N.W.2d 475, 480 (1994).

## CONCLUSION

PrimeOne has utterly failed to meet its initial Rule 56 motion burden or substantive burden of proving the elements of rescission based on fraudulent procurement. Plaintiff respectfully requests that this Honorable Court deny PrimeOne's motion for summary judgment.

Respectfully submitted,

FABIAN, SKLAR & KING, P.C.

*/s/ Stuart A. Sklar*

By: _____
Stuart A. Sklar (P38146)
Attorneys for Plaintiff

Dated: December 5, 2022

## <u>CERTIFICATE OF SERVICE</u>

Susan Harwell-Okerstrom certifies and states that on December 5, 2022, I electronically filed the foregoing document with the Clerk of the Court using the United States District Court's CM/ECF filing system, which will send notification of such filing to the following:  David Berkal (dberkal@berkallaw.com).


<u>*/s/Susan E. Harwell-Okerstrom*</u>
Susan E. Harwell-Okerstrom
Paralegal
sharwell@fabiansklar.com